## LEE v. NATIONAL REFINING CO. et al.

No. 27330. Jan. 18, 1938.

Martin & Spradling and George H. Jennings, for plaintiff in error.

T. L. Blakemore, for defendants in error.

HURST, J. This is an action for specific performance of a contract. Plaintiff also asked for an accounting and the appointment of a receiver, but neither is involved in this appeal. The controversy arose as follows: Prior to 1925 the plaintiff, Ed C. Lee, and others were owners of certain oil and gas leases. Plaintiff commenced oral negotiations to sell the leases to the National Refining Company. For the purpose of determining the issues involved herein, it is not necessary to distinguish between the Ohio corporation. and the Oklahoma corporation, and they will be referred to as the defendant. Plaintiff contends that by certain letters and telegrams transmitted during the month of December, 1925, a contract was executed whereby the defendant agreed to pay the sum of $60,000 for assignments of the leases, and in addition, it agreed to execute to plaintiff an assignment of a 1/16 overriding royalty on all the leases so purchased. The defendant contends that it agreed to execute the assignments of the overriding royalty only as to those leases where there was no more than 1/8 already outstanding. On one of the leases known as the Oglesby lease, in addition to 1/8 royalty an overriding royalty of 1/16 had already been conveyed to a third party, and the question to be determined is whether the defendant can be compelled, under the terms of the contract, to convey to plaintiff an overriding royalty on that lease. There is no dispute as to the right to an overriding royalty in the other leases.

The correspondence relied upon as comprising the contract commenced with a letter from the president of defendant company to its geologist, dated December 3, 1925. and which was exhibited by the geologist to the plaintiff. The letter advised the geologist that the company "would agree to deal on the same acreage as presented to us before * * * to be purchased at a cost not to exceed $60,000 * * * for the entire working interest out of which we will carry Mr. Lee for a one-sixteenth (1/16) also provided the royalty interest does not exceed one-eighth (1/8)." On December 5, 1925, plaintiff wrote a letter to the president of defendant company, wherein he agreed to accept the proposition "with the following understanding, that I am to be carried a one-sixteenth (1/16) overriding royalty in all oil, gas and gasoline produced from each and every lease that is to be assigned to the National Refining Company." On December 8, 1925, the president of the company sent plaintiff the following telegram, in part:

"Your letter fifth stop if you will secure assignments on all leases heretofore submitted by you covering the seven eighths or all working interest * * * will pay you not to exceed sixty thousand cash for these assignments and assign to you a sixteenth overriding royalty providing the regular royalty on all these leases is only one-eighth royalty."

On December 10, 1925, plaintiff answered by telegram:

"Your wire eight stop will start securing assignments tomorrow and will place them in bank just as fast as possible."

Plaintiff then obtained assignments of the leases conveying to defendant a seven-eighths working interest in all except the Oglesby lease, where a 1/16 overriding was outstand-

ing, and the defendant accepted them and paid the $60,000 as agreed. No instruments were ever executed by defendant to plaintiff evidencing his right to an overriding royalty in any of the leases, but by transfer and division order payments were made to plaintiff of 1/16 of the oil, gas and gasoline produced from all the leases, except the Oglesby lease. Defendant, at the trial, made a tender of assignments of overriding royalty in all the other leases.

The court, over the objection of the defendant, permitted the introduction of testimony regarding the intention of the parties and the circumstances surrounding the execution of the contract. In this connection plaintiff testified that after he received defendant's telegram of December 8th, he had a conversation with the company geologist in which the geologist advised plaintiff that the company intended to carry plaintiff for a 1/16 overriding royalty on all the leases, regardless of any outstanding overriding interest. In ruling on the objection to the introduction of this testimony the court stated that it was preliminary and that "at this time the objection is overruled." However, the court later declined to strike it from the record, and apparently proceeded upon the theory that the terms of the contract were ambiguous. The defendant took the position that the contract was not ambiguous, but evidently not much weight was given to this evidence, and judgment was rendered denying plaintiff the relief prayed for. Plaintiff brings this appeal.

1. The first proposition advanced by plaintiff is that the contract has been fully performed and he is entitled under its terms to an assignment covering an overriding 1/16 royalty in every lease assigned to defendants. We must first determine, therefore, what part of the correspondence constitutes the offer and acceptance which created the contract. The rule is stated in Kingfisher Mill & Elevator Co. v. Westbrook (1920) 79 Okla. 188, 192 P. 209:

"Where a person offers to do a definite thing, and the party to whom the offer is made accepts conditionally, or introduces a new and material term into the acceptance, his answer constitutes a counterproposal, and there is no agreement; but, when the party to whom the counterproposal is made accepts it. such counterproposal and acceptance constitute a binding contract."

See, also, section 9430, O. S. 1931 (15 Okla. St. Ann. sec. 71): sections 58, 60, Restatement of the Law of Contracts. The letter of December 3rd, from the president of defending company to its geologist and which was exhibited to plaintiff, contained an offer to buy the leases for $60,000 and carry plaintiff for a 1/16 overriding royalty, providing the "royalty interest" does not exceed 1/8. This referred to any outstanding royalty interest. The letter of December 5th, from plaintiff to defendant, was not an unconditional acceptance of this offer for the reason that plaintiff stated that he was to be carried for a 1/16 overriding royalty "on each and every lease" regardless of the royalty interest outstanding. Treating this, then, as a counterproposal, it was not unconditionally accepted by the defendant in its telegram of December 8th, inasmuch as it contained the qualification that the assignments should cover "the seven-eighths or all working interest" and that "the regular royalty on all these leases is only one-eighth royalty." This telegram, therefore, constitutes a counterproposal, and it was unconditionally accepted by plaintiff by his telegram of December 10th, forming the contract.

Plaintiff contends that the defendant, by its answer and opening statement, admitted the contract to consist of plaintiff's letter of December 5th, and defendant's telegram of December 8th, and that it thereby admitted that the telegram constituted an absolute and unconditional acceptance of the terms of the letter, and that it is now changing its theory in this court. But throughout the case, the contention of the defendant has been that the contract between the parties did not unconditionally contemplate an assignment to plaintiff of an overriding royalty on every lease, but only where the outstanding royalty was 1/8. This is the theory presented here and it has not been changed upon appeal.

The terms of the offer contained in the telegram of December 8th are not ambiguous. Defendant offered to purchase only such assignments as conveyed a 7/8 working interest, and agreed to carry plaintiff for a 1/16 overriding royalty out of the 7/8. We can see no ambiguity created by the addition of the clause "providing the regular royalty on all these leases is only one-eighth royalty." Considering the amount of the working interest required, it must be taken to define the extent of all royalty outstanding as being 1/8. But plaintiff contends that the term "regular royalty" does not include the overriding royalty that may be outstanding, but by its definition refers only to the outstanding interest of the landowners. He relies upon Burns v. Bastien, 174 Okla. 40, 50 P. (2d) 377, holding that "in a strict sense, 'royalty of oil and gas' means a share of the product of

profit reserved by the owner for permitting another to mine and remove the product, but it may be used to denote proceeds or income from the oil and gas rights." However, construing the contract in its entirety, the intention of the defendant appears to be that it desired to own 13/16 of the entire production after the 1/16 overriding royalty had been assigned. While technically the term "regular royalty" means the 1/8 reserved in the lease by the lessor, it is apparent that the term as used here was meant to include all outstanding royalty. Had it been, the requirement by defendant that plaintiff assign to it 7/8, or the entire working interest, would be a nullity, since, as here, part of the working interest might be already assigned. Therefore. construing the plain terms of the contract, and giving effect to every part, the plaintiff's position is not tenable.

Plaintiff further contends that the telegram of December 8th does not itself constitute the offer, but must be considered as modified or explained by the oral agreement of the company geologist that defendant would assign plaintiff an overriding royalty on all the leases irrespective of the royalty outstanding. Where a written contract is complete in itself, and, viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended, and the intention of the parties is to be gathered solely from the words used. 13 C. J. 524. The conversation with the geologist, therefore, has no place in the construction of the contract. It is not clear from the record whether the court considered the contract as not ambiguous, or whether the oral testimony submitted by plaintiff was not considered sufficient to support his contention. If the court based its judgment upon the theory that the contract is ambiguous, but that the geologist was not authorized to modify the contract, or that such modification was not attempted by the geologist, an examination of the record convinces us that the judgment of the trial court so finding is not against the clear weight of the evidence. Where the trial court gives the wrong reason for its judgment or considers immaterial issues, if the result is correct, it will not be set aside on appeal. Douglas v. Douglas (1936) 176 Okla. 378, 56 P. (2d) 362.

2. Plaintiff's second proposition is that the defendants, without objection, accepted the performance tendered by plaintiff under the contract and have retained the benefits, and they are, therefore, bound by the burdens of the contract. The correctness of this proposition may be conceded. But the burden of this contract is to pay a cash consideration and assign plaintiff a 1/16 overriding royalty providing the royalty outstanding was no more than 1/8, and with this burden, the defendant has fully complied, except as to the execution of the instruments themselves.

3. Plaintiff's third proposition is that the court erred in the admission of incompetent and prejudicial testimony on behalf of defendant. The evidence complained of consists of two letters which only go to show the intention of the parties. Under our view of the case that the contract is not ambiguous, they are immaterial in determining the construction of the contract. By the terms of the contract itself, the defendant is entitled to prevail, and the improper introduction of any evidence in his favor, showing the intention from surrounding circumstances, is harmless error. Tobin v. O'Brieter (1906) 16 Okla. 500, 85 P. 1121; Eggstaff v. Phelps (1924) 99 Okla. 54, 226 P. 82; In re Graham's Estate (1934) 169 Okla. 568, 37 P. (2d) 964; secs. 252, 388, and 3206, O. S. 1931; 5 C. J. S, 997, sec, 1728; 3 Am. Jur. 594, sec. 1039.

Defendant makes no contention that plaintiff is not entitled to an assignment of an overriding 1/16 royalty in all the leases except the Oglesby lease, and he is entitled to such assignments, and the judgment is accordingly modified. The judgment, as so modified, is affirmed, and the costs are taxed against the plaintiff in error.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and CORN. JJ., concur.