GOLDSTEIN et al. v. WELDED PRODUCTS CO.

No. 31876. Nov. 20, 1945.

Rehearing Denied Dec. 11, 1945.

*164 P. 2d 229.*

220

Claud Briggs, of Oklahoma City, for plaintiffs in error.

Fred E. Suits, of Oklahoma City, for defendant in error.

PER CURIAM. This is an action brought in the district court of Oklahoma county by Welded Products Company against Sam Goldstein and Barney Friedman, copartners, doing business as City Metal & Salvage Company, to recover balance due for the construction and sale of a hydraulic baling press.

The defendants, among other defenses, by way of counterclaim pleaded as a defense breach of an express and implied warranty as to fitness and sought to recover damages by reason of such breach.

The trial resulted in a verdict and judgment for plaintiff. Defendants have appealed and rely for reversal solely on the ground that the court committed error in excluding certain evidence offered by them.

The record discloses that the parties entered into a written contract whereby defendants agreed to furnish the material and plaintiff agreed to construct the press for the sum of $3,500. The contract contained the following express warranty:

"The first party assures the second party that in the construction and manufacture of the said hydraulic baling press, that no patent rights are being violated. The party of the first part guarantees in connection with the hydraulic baling press, that said press will have sufficient power to compress light sheet metal scraps to bundle size of a maximum of 14 x 18 x 24 . First party also warrants said press against any defects caused by defective workmanship."

Defendants offered evidence tending to show that the press was not properly constructed; that the workmanship was defective; that it was not suitable to perform the ordinary work for which it was made and constructed; that numerous breakdowns occurred, and that plaintiff, after frequent attempts, was unable to satisfactorily remedy these defects. Evidence was also offered tending to show the manner in which they were damaged by reason of the defective press and the amount thereof.

Plaintiff by its evidence admitted

that there were frequent breakdowns in the machine while being operated by defendants, and that it was at different times called upon to repair the press, and that it finally succeeded in repairing the press, and that it thereafter operated satisfactorily. It denied, however, that the defects and the breakdowns were caused or in any manner due to defective workmanship. It offered evidence which tended to show that defendants damaged the press by attempting to compress hot water tanks, ice cream cans, automobile bodies and parts of the frames; that the press was not constructed to compress such material, all of which defendants knew; that the press was constructed to compress and bale "light sheet metal scraps to bundle size 14 inches by 18 inches by 24 inches" as stated in the written contract. Defendants attempted to prove that prior to the execution of the written contract oral statements, representations, and warranties were made by Mr. Tucker, agent of the plaintiff, as to the character of press which was to be constructed and attempted to elicit from defendant Friedman the following evidence:

"Q. At the time and leading up to the execution of this contract, what representations were made to you by the plaintiff, through its agent, Mr. Tucker, in a comparative way, or any other way as to the type of machine that would be constructed, and what it would produce in the way of baling baled scrap metal? Mr. Suits: Objected to now, as being incompetent, irrelevant and immaterial. The Court: Objection sustained. Mr. Briggs: Exception. We offered to show, or we offer to show by this witness, and expect his answer to be, that definite, specific representations were made by Mr. Tucker, that he would construct a machine under this contract that would produce a standard size bale of scrap metal at a minimum of twenty tons per eight hour day, or a total of forty tons in the contemplated sixteen hours per day proposition. Mr. Suits: To which offer we object for the reason that it is incompetent, irrelevant and immaterial. The Court: Objection sustained . . .

Q. Did you, in connection with that contract, and when you inspected that contract, did you rely and were you relying upon the statements and warranties that had been made by Mr. Tucker relative to the type and operating results of the machine that would be produced? Mr. Suits: Now, that's objected to as being incompetent, irrelevant and immaterial. The Court: Sustained. Mr. Briggs: Exceptions. We offer to show by the answer of the witness, and expect him to testify that he relied as to those details absolutely upon representations made by Mr. Tucker. Mr. Suits: To which offer we object, for the reason that it is incompetent, irrelevant, and being an attempt to vary the terms of a written contract. The Court: Sustained. Mr. Briggs: Exceptions."

Defendants also offered to prove the same state of facts by other witnesses, which evidence was also excluded. It is contended that the trial court committed reversible error in excluding this evidence.

Defendants did not plead nor do they contend that they were induced to enter into the contract by reason of false or fraudulent representations, but on the contrary counsel in open court expressly disclaimed such contention. Neither is it alleged that the execution of the contract as written was due to accident or mistake of facts.

Defendants by the offered evidence sought to prove that prior to the execution of the written contract oral representations and statements were made by Mr. Tucker, agent of the plaintiff, whereby plaintiff agreed to construct a press materially different from the press mentioned and described in the written contract. The evidence offered tending to vary, contradict, and impeach the terms of the written contract. It was therefore inadmissible. 15 O. S. 1941 § 137.

In the case of Thompson v. Jones, Inc., 189 Okla. 480, 118 P. 2d 196, it is said:

"The execution of a contract in writing, whether or not the law requires it to be written, supersedes all oral negotiations or stipulations concerning its

222

matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract."

See, also, Investors Royalty Co. v. Lewis, 185 Okla. 302, 91 P. 2d 764; Seal Oil Co. v. Roberson, 175 Okla. 140, 51 P. 2d 801; Wichita Flour Mills Co. v. Guymon Equity Exchange, 150 Okla. 245, 1 P. 2d 657.

Defendants contend that the evidence was admissible for the purpose of assisting the court in construing the contract and arriving at the real intention of the parties as to the character and type of press that was to be constructed. This contention is clearly untenable. The written contract is definite and clear on its face. It is not uncertain or ambiguous as to any of its terms. The intention of the parties is readily ascertainable from the contract itself. There was therefore no room for construction. It was the duty of the court to give effect to the intention of the parties as clearly expressed in the written contract. 15 O. S. 1941 § 155; Strange v. Hicks, 78 Okla. 1, 188 P. 347; Lehr v. Melton, 172 Okla. 150, 44 P. 2d 111; Lee v. National Refining Co., 181 Okla. 556, 75 P. 2d 406; Hicks v. Mid-Kansas Oil & Gas Co., 182 Okla. 61, 76 P. 2d 269.

Defendants further contend that the evidence offered was admissible for the purpose of establishing breach of an implied warranty as to fitness. It is, of course, true that in cases of this character, notwithstanding there exists a written contract containing an express warranty, unless the contract otherwise provides, the defendant may plead and prove as a defense that the article sold was not suitable to perform the ordinary work for which it was made and manufactured; but parol evidence offered for this purpose is inadmissible where it tends to vary, contradict or impeach the terms of the express warranty. Colt v. Koehn, 128 Okla. 39, 260 P. 1060; Olson v. Sullivan, 109 Okla. 297, 234 P. 634; Fairbanks, Morse & Co. v. Miller, 80 Okla. 265, 195 P. 1083.

The purpose for which the press was to be constructed and the work it was intended to perform is clearly and distinctly set forth in the written contract. The trial court allowed the defendant great latitude in attempting to prove that the press as constructed was incapable of performing such work. Evidence was only excluded to the extent in which defendants attempted to prove that an oral agreement was entered into other and different than the written contract entered into and executed by the parties. The trial court ruled correctly in excluding such evidence.

The judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.